Tilghman C. J.
Walter Finney was a captain in the Pennsylvania line of the army of the United States, during the revolutionary war, and as such, became entitled to, and received a grant from the commonwealth of Pennsylvania, of 500 acres land in the county of Mercer. This land has been always held by the said Finney, and the question is, whether it is subject to county and road taxes.
In the 7th section of the act “ for the more effectual sup- “ ply and honourable reward of the Pennsylvania troops, in “the service of the United States of America,” {passed 1st March, 1780), it is enacted, that S‘ all lands which have been, “ or may hereafter be granted within this state to any officer “ or soldier of the line of this state, by virtue of any resolu- “ tion. of congress, or law of this state, as a reward for their “ services, shall be, and are hereby exempted from taxes, for “ and during the life of such officer or soldier respectively, “ unless the same shall be transferred or aliened to any other “ person.” And the same provision is inserted verbatim, in the 33d section of the act of 16th March, 1785, (2 Dall. St. Laws, 256). The act of 1st March, 1780, was passed at a very critical period of the war, when the paper money issued by, congress was much depreciated, and the credit of the United States was very low. The army had suffered much and, was badly paid, of course great discontents prevailed. *65 To remove these discontents by promises of ample reward, was the great object of the act of assembly. It is to be considered as a contract between the government and the army, and the words being spoken by the legislature, are entitled to a liberal construction in favour of the soldier. But there needs no liberality of construction. The plaintiff asks no other than the literal and common meaning of the expressions of the law. He asks whether money levied by public authority for the making and repair of roads, and the defraying of various county expenses, be not taxation '? It is granted by the county commissioners, that this levy is a taxation, but they say, that county taxes are generally distinguished by the name of county rates and levies, and that it cannot be supposed the legisture intended to exempt the land of officers and soldiers from the payment of these rates and levies, because they are in fact for their benefit, and without them, the county would remain a wilderness. As to the distinction between county rates and taxes, it may be observed, that the legislature have sometimes used one expression and sometimes the other; so that very little is to be concluded from it. In an act concerning county rates and levies, passed 1st October, 1779, (1 Dall. St. Laws, 807), the word tax is frequently used. So likewise in the act 3d April, 1792, (3 Dall. St. Laws, 206), sect. 1st, we find the expression county or city rates or taxes. But what is much more to the purpose, in the 15th section of the act of 8th April, 1785, (2 Dall. St. Lazos, 318), it is enacted, “ that “ no land taken up by virtue of that act, shall be subject to, “ or charged with any general tax for the use of the state, for “ two years from the time of the passing of the act.” And by the act 3d April, 1792, sect. 12, no direct tax for the use of the commonwealth was to be laid for the term of ten years, on certain lands therein mentioned. This shows, that when it was the intent of the legislature to exempt from state taxes only, they knew very well how to express their meaning without leaving room for doubt or cavil. The argument drawn from the utility of the county taxes has not much weight. All taxes are, or at least ought to be, useful to the public ; and consequently to the individual, but it is of advantange to the individual to be exempt from the payment of the tax, because the object of the tax is attained without any expense to him. So of roads and other objects of county expenses. But it is objected, that unless soldier’s lands were *66 taxed, there could be no roads. This by no means follows. -At the time this law was passed, no lands were located for ^le soldiers, nor was it certain then, that they would all be located together. And even if they should be, many would gejj shares, which would immediately become subject to taxation. At any rate, if roads were wanted, they might be made by voluntary contribution. And if it was the interest, of the land-holders to make roads, the necessary money would be raised. But the argument is at least but conjecture, opposed to fact. The fact is, that in the present situation of the county, sufficient taxes may be raised, without breaking in upon the lands of the soldiers. And yet, the commissioners would have us suppose, that the legislature knew it to be impossible to defray the county expenses without taxing those lands. Upon the whole, the exemption claimed by the soldiers is warranted by the words of the law, and I am not for taking it away from motives of policy. My opinion is, that the judgment of the Court of Common Pleas should be reversed, and judgment be entered in this Court for the plaintiff in error.
Yeates J.
The plaintiff in error has brought a suit to recover back money, which he paid to the defendants as commissioners of Mercer county, for county and road taxes, op a tract of donation land. He contends, that as an officer of this state duly commissioned in the service of the United States, during the revolutionary war, he is exempted from the payment of such taxes in consequence of two acts, of assembly, passed on the 1st March, 1780, (1 Dall. St. Laws, 834), and 16th March, 1785, (2 Dall. St. Laws, 256).
The first act recites the resolve of congress of 15th May, 1778, declaring certain military officers to be entitled to receive annually, for the term of seven years after the conclusion of the war, one half of their pay, and after paying a just tribute to the services and sufferings of the troops, directed by the 7th section, “ that all lands which have been, or may “ hereafter be granted within this state, to any officers or “ soldiers of the line of this state, by virtue of any resolution of congress, or law of this state, as a reward for their ser- “ vices, shall be, and are hereby exempted from taxation, for “ and during the life of such officer or soldier respectively, “ unless the same shall.be transferred or aliened to any other *67 " person.” The 33d section of the act of 16th March, 1785, contains the same words, and this section remains unrepealed by the act of 9th April, 1791. 3 Dall. St. Laws, 65.
The house of assembly by their resolution of 20th March, 1779, promised, “ that at some future time they would by a "suitable gratuity, recompense the services of such of their veteran soldiers, as might have engaged and should continue during the war.”
The commonwealth is unquestionably bound by its engagements as well as private individuals ; and the true mean-: ing of the law of the 1st March, 1780, must govern our decision in the case before us.
The general word taxation is inserted in both laws now under consideration. Was it then the intention of the legislature, that the donation lands, while they remained in the hands of the officers and soldiers, should be exonerated from every species of taxation ?
Every citizen of the commonwealth, who has lived during the revolutionary war, has sensibly felt the great difference, between the assessments for state taxes and those for county rates and levies. Whoever will consult our statute books, will find among other laws taxing the citizens,-the following acts.
An act for emitting 200,000l. in bills of credit to be sunk by a tax of Is. 6d. in the pound, on all estates, real and personal, &c. passed 20th March, 1777, and by another law of the 13th October, 1777, the tax was raised to 5s. in the pound.
An act for raising §620,000 for the use of the United -States, wherein the several counties were quoted, passed 27th March, 1778, which was continued by two laws of the 5th December, 1778, and 20th March, 1779.
An act to raise §1,900,000, the supplies of the state for 1779, passed 3d April, 1779, and another act to raise the ad-ditional sum of §5,700,000, passed 10th October, 1779.
An act to raise § 2,500,000 monthly for eight months, for the supply of the treasury of the United States and of this state, commencing in January, 1800, passed 23d November, 1779, and which therefore was in full operation when the act of 1st March, 1800, passed. The monthly tax was continued by an act of 1st June, 1780.
An act for raising 93,640/. 10s. annually for 6 years, for redeeming the bills of credit, passed 19th December, 1780,
*68 An act for raising 200,000/. payable in gold or silver, passed 21st June, 1/81.
An act for raising 80,000/. payable in state money, passed 25th June, 1/81.
An act for raising 139,245/. 4s. for 1/82, passed 2/th March, 1/82.
An act for raising $300,000, for 1/83, passed 21st March, 1/83.
An act for raising $205,189 annually, for 25 years, passed 23d September, 1/83.
An act for raising Z6,94Si. 17s. 6d. for yearly taxes after 1/85, to. continue for s.o long a time as should be necessary to effectuate the purposes of this law, passed 16th March, 1/85, and which remained in force until it was partially repealed by the act of 9th April, 1/91. It is a striking circumstance that this law of 16th March, 1/85, imposing so heavy a burden on the people, contains a repetition of the exemption of the donation lands from taxation.
There can be no doubt, therefore, that a release of the state taxes, so far as the donation lands would otherwise be subjected thereto, was highly advantageous to military men. Peace was restored in 1/83, but the war left an enormous debt, and this government was bound by every principle of good faith and sound policy to discharge its just proportion thereof. The continuance of the war was wholly uncertain, when the law of 1st March, 1/80, was enacted.
It cannot be denied, that assessments made for the use of counties are taxes in their nature, but the appropriate names by which they are denominated in our laws are county rates and levies, as will be fully seen by references to the old act of 20th March, 1/24-5, and its two supplements of 1st October, and 2/th November, 1//9, the acts of 18th March, 1/80, and 3d April, 1/92; the general act of 11th April, 1/99, and its two supplements of 4th April, 1805, and 28th March, 1808. Each county, by the policy of our system, builds its respective court-house, pays its incidental expenses, makes and keeps in repair its public roads and highways, and supports its own poor. There is strong reason, in my idea; for a line of discrimination between state taxes and other taxes, as applicable to military men holding lands under the special bounty of the legislature. They have achieved American independence by their labours, and it is highly proper, that *69 donation lands bestowed on them by way of remuneration for their faithful services, should be discharged from taxation for the common defence, while held by themselves. But _ , . . I can see rio good reason why they should not pay their rate of assessments made for county purposes, equally with their fellow-citizens, which are essentially necessary in a state of peace, and greatly enhance the value of their lands. Such from my recollection was the general idea on the passing of the law of 1st March, 1780, and I should presume the honest pride of an officer would scorn a distinction from other persons in disbursements of this nature. For some years past we have been fortunately relieved from the burden of a state tax, but should the time arrive when the public exigencies should render the imposition of such a tax proper and necessary for the common weal, the military men would then be entitled to an exemption from such a taxation for their donation lands.
I am of opinion, that judgment should be entered for the defendants.
Brackenribge J.
At the first breaking of the argument in this case, the course of reasoning of my mind ran in this way. A country is quasi a corporation, as it is termed in laxo. It is usually laid out at the petition of those who conceive themselves to have an interest in laying it out, and who expect to be included in its boundaries. In making a grant of lands to individuals, had the state a power to exempt from the being considered as included in a county, and subject to county rates and levies ? Must not the land granted be considered as taken by an individual subject to county duties, and to county dues? Could it have been in the contemplation of the legislature granting these lands, that the donation tract of country should remain a wilderness during the life of the grantees, unless aliened? Without a county laid off within it, it must have remained at a great distance from a court of justice, and no road at a county expense would probably be laid out or bridge built. Is it not an interest which every grantee has in his soil, that he shall have a county laid out within a reasonable boundary and in a reasonable time ? That he shall have roads laid out and poor supported? Can he expect those advantages without contributing a portion of the expense ? What is laid out for the benefit of a county, may it- *70 not be considered as money laid out and expended for the use of every inhabitant ? On principles of natural justice is not evelT one bound to contribute who has property within it ? Could the commonwealth in granting lands, provide that tjle owner Df property so benefited, should be exempt from the payment of a contribution ? Might it not as well provide that every such holder of property within a county which might come to be laid out should have an immunity from the payment of his debts ? That he should be liable neither to arrest nor imprisonment ? What they could not legally do, they shall not be considered as intending. Clear it is, that they could not, under the constitution of the United States, exempt from the payment of an United States tax. A law of the state is lex sub graviore lege. Shall they be considered under this law as intending to exempt from an United States tax ? It may be said, that in this kind of imperium in imperio, a a county within a state has its rights, and that there is an implied contract on the part of all that have property within it, that they shall pay towards improvements which are for 'their benefit; and that this sort of obligation cannot be dispensed with by a reservation of the state in making a grant, and therefore shall not be intended as going that length.
But notwithstanding such a course of reasoning pressed itself upon my mind in the first impressions, yet on the other hand there are arguments which may serve to balance them. The donation and exemption in question, was a remuneration for the past services, and an encouragement for the future, of the soldiers of the state, in the service of the United States, and which provision was made pending the war, the continuance of which was uncertain; in which case, and during which time, counties might be laid out embracing this tract of country, and county rates and levies laid and the land sold. Or even after the war, where the officer or soldier had fallen, his representatives could not reasonably be supposed to be in a capacity to pay taxes — a widow or a minor. If these lands could be sold for taxes, it could turn to little account to have a gift of them; and lands unseated are liable to assessment and to be soldfor taxes.
But a more substantial argument is, that a county, though a species of corporation remains, nevertheless, as to its interior administration, subject to the regulations and ordinances of the legislature, which prescribes the mode of elect *71 ing officers, the securities which shall be given, the principles on which assessments shall be. made for county dues, the' mode of collection and the means of enforcing it; not only this, but the taxable persons and property have been the subjects of the law. Clergymen and school-masters have been exempted from county as ■well as state dues; persons not six months out of servitude, or apprenticeship, &c.; but what is more, it has from an early period exercised the exemption of real estate in some cases from county rates and levies. By an act of the 20th March, 1724-5, supervisors are ordered to lay taxes with the limitation of nine-pence in the pound on all real or personal estate within the township, tracts of land unlocated, unseated or unimproved, and proprietory quit rents excepted, to be employed for the opening, clearing, amending and repairing highways, and that the proprietory and governor’s estates shall not be liable to be rated or assessed. And by an act so late as the 3d April, 1792, it is provided by a supplement to the several acts for raising county rates and levies, that nothing in this act contained shall extend to the laying or assessing any county, city, township, or district rates or taxes upon any tract or tracts of land, upon which no state tax has been heretofore laid and assessed. By a subsequent act of 3d April, 1792, lands granted not to be subject to any general tax for two years, which would imply that they might be subject to county rates and levies. But the act of 1st March, 1780, has not such implication from the use of the word general. I must therefore construe the law as granting to officers and soldiers, as. exempting from all tax, and therefore must give judgment in this case for such exemption of all taxes whatever, and concur in reversing the judgment, and entering judgment for the plaintiff.
Judgment reversed, and judgment entered for the plaintiff in error.